IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOE LEE,

                                                                 OPINION and ORDER

                Plaintiff,

                                                                   08-cv-658-bbc

     v.

WIILLIAM CHARLEBOIS,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Joe Lee is proceeding <u>in forma pauperis</u> on his claim that defendant William Charlebois violated his Fourth Amendment right to be free from an unreasonable seizure of his person by using excessive force against him.  The case is before the court on defendant's motion for summary judgment, dkt. # 40.  I conclude that plaintiff has failed to raise any genuine issues of material fact that would allow a reasonable jury to find in his favor.  I conclude therefore that defendant is entitled to judgment as a matter of law on his Fourth Amendment claim.  Plaintiff's pending cross motion for summary judgment, dkt. #53, will be denied as moot.

      From the facts proposed by the parties, I find that the following facts are material and undisputed.

1

UNDISPUTED FACTS

Plaintiff Joe Lee is currently incarcerated at the Columbia County Correctional Institution, Portage, Wisconsin. He stands six feet three inches and weighs 260 pounds. Defendant William Charlebois is employed by the City of Portage, Wisconsin as a police officer. He five feet six inches tall and weighs 155 pounds.

At about 4:30 p.m., on January 10, 2008, plaintiff was released from the Columbia County jail. His first stop was the "Kourt House Bar" in Portage, Wisconsin, where he had a few beers before going to the Wal-Mart store in Portage to buy a crow bar.

That same evening defendant Charlebois was on duty when he was called to respond to a call involving damage to property or theft outside the Zona Gale Center. When defendant arrived, he identified himself to the individual beside the soda pop machine, whom he later identified as plaintiff. (It is disputed whether defendant personally observed plaintiff breaking into the soda pop machine with a crow bar.) Plaintiff ran from the scene, followed by defendant, who was also on foot and was yelling repeatedly to plaintiff to stop. (It is disputed whether plaintiff and defendant had any contact during the chase and whether plaintiff disarmed defendant of his Taser® electronic control device.)

At one point, plaintiff climbed the exterior stairs of a building to a second floor balcony. When defendant ran up the stairs after him, plaintiff jumped from the second floor balcony to the ground, injuring his ankle. Defendant ran back down the stairs to continue

2

chasing plaintiff, while using his radio to call for backup.

Despite his ankle injuries, plaintiff got up and tried to run again.  Defendant caught up and jumped onto plaintiff's back.  (It is disputed whether plaintiff had already fallen to the ground and stated that he was giving up before defendant jumped on his back.)  Defendant pressed his knee into plaintiff's back and put him in a headlock.  Plaintiff's hands were underneath his body holding onto money.  He resisted defendant's attempts to handcuff him.  Defendant tried to pull plaintiff's arms and hands out from under him but was unable to do so.

About this time, Officer Anthony Brauner arrived and threatened to deploy his Taser® electronic control device if plaintiff did not cooperate with defendant's attempt to handcuff him.  With Officer Brauner's assistance, defendant handcuffed plaintiff, while plaintiff was still clutching several dollar bills.

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  When deciding a motion for summary judgment, the judge's function is not to

3

weigh the evidence for herself and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "[I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. All reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party. Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).

The only issue in this case is whether defendant used excessive force when he arrested plaintiff by placing him in a headlock and planting his knee on plaintiff's back. Under the Fourth Amendment, officers may use only such force as is "'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 396 (1989). Because the reasonableness inquire is an objective one, the "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 397. Relevant "facts and circumstances" may include "'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" Smith v. City of Chicago, 242 F.3d 737, 743 (7th Cir. 2001)(quoting Graham, 490 U.S. at 396). The officer's underlying intent or motivation is irrelevant. Graham, 490 U.S. at 396.

"An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater

4

force than was reasonably necessary to make the arrest.'" Gonzalez v. City of Elgin, ___ F.3d ___, No. 08-2658, slip op., 2009 WL 2525565, at *11 (7th Cir. Aug. 20, 2009) (quoting Lester v. City of Chicago, 830 F.2d 706, 713 (7th Cir. 1987)). A factual inquiry into an excessive force claim typically requires a jury to balance disputed factual contentions. Gonzalez, at *11. Nonetheless, summary judgment is proper when the court is convinced that even when the facts are viewed in a light most favorable to the arrestee, no jury could find that the officer failed to use of an objectively reasonable amount of force. E.g., Johnson v. Scott, ___ F.3d ___, No. 08-3317, slip op., 2009 WL 2432006 (7th Cir. Aug. 7, 2009) (upholding district court's grant of summary judgment to officer in excessive force claim, where officer's use of force, including deployment of police dog, was objectively reasonable in light of possibility that arrestee was armed and that he was attempting to evade arrest by leading officer on high speed car chase and fleeing on foot after stopping at police road block); see also Smith, 242 F.3d at 744 (upholding district court's grant of summary judgment to officers in excessive force claim, noting that "[n]ot all factual disputes warrant the denial of summary judgment").

Taking the facts in the light most favorable to plaintiff and resolving the disputed facts in plaintiff's favor, as I must when deciding a motion for summary judgment, Schuster v. Lucent Technologies, Inc., 327 F. 3d 569, 573 (7th Cir. 2003), I am satisfied that no reasonable jury could find in plaintiff's favor. Plaintiff agrees that he broke into a soda pop

5

machine, he ran from the scene when defendant arrived, he led defendant on foot chase, including up a flight of stairs to the second floor of a building, and he ignored defendant's repeated commands to stop.  Plaintiff does not dispute that he continued to evade defendant by jumping from a second floor porch, which caused him to injure his ankle, and that, even then, he got up and continued trying to run until his injured ankle gave out.  Plaintiff's version of the story is that after his failed attempt to get up and continue running, he was lying face down, when defendant caught up to him, jumped on his back, put a knee in his back and placed him in a headlock.  I will assume that this is true.  Nevertheless, plaintiff does not deny that he continued to resist being handcuffed by keeping his hands under himself until a backup officer arrived.  Lee Dep., dkt. #44, exh. #2, at 26 ("Q: So it's your testimony that while Officer Charlebois was on your back he was trying to pull your arm out?  A: Yes.  Q: And you were resisting?  A: Right, but, you know, . . . I wasn't trying to do harm to him . . . .")

Although plaintiff makes much of his allegation that defendant did not tell the truth about an encounter during the foot chase when defendant says plaintiff disarmed him of his Taser® electronic control device, the facts concerning this encounter are not material to the determination of the reasonableness of the force applied to plaintiff at the time of his arrest. The sole issue in this case is whether the amount of force used by defendant at the time he seized plaintiff was objectively reasonable.

6

In Phillips v. City of Milwaukee, 123 F. 3d 586 (7th Cir. 1997), the Court of Appeals for the Seventh Circuit held that police officers did not use excessive force when they took down an arrestee, placed him in a prone position on the floor and placed a knee in his back, although the arrestee died shortly thereafter. An autopsy revealed no sign of trauma but evidence of a number of diseases or debilitating conditions, including obesity. In upholding the lower court's grant of summary judgment, the court highlighted the fact that the arrestee's size, strength and resistance necessitated forcing him to the floor. Id. at 589 & 593. However, in a case with similar facts, Abdullahi v. City of Madison, 423 F.3d 763, 769-70 (7th Cir. 2005), the court of appeals found summary judgment inappropriate in a case in which it was undisputed that the plaintiff's decedent was lying face down on the ground with his hands behind his back but still resisting before the police applied force to his back or shoulders and that he died within two minutes of the application of force. The different results may be attributable to the fact that in Abdullahi, unlike Phillips, the autopsy showed severe injuries consistent with pressure or trauma to the suspect's chest and neck area.

In this case, plaintiff was almost twice defendant's size, nine inches taller and outweighing defendant by more than 100 pounds. A reasonable officer with such a size disadvantage would know he had to use more force to subdue a suspect the size of plaintiff than an officer closer to the suspect's same size. It is telling that, in his response to

7

defendant's proposed findings of fact, plaintiff questions why defendant would have thought that using his knee in plaintiff's back would keep him subdued when plaintiff was twice the officer's size.  Plt.'s Resp. to Def.'s PFOF, dkt. #48, response #38.  It is not unreasonable for an officer who did not know whether a suspect twice his size would continue to flee or resist arrest to use the force defendant employed in this instance in attempting to keep the suspect subdued until backup arrived.  Moreover, in both Phillips and Abdullahi, a number of officers were present to deal with one resisting suspect; in this case, defendant was alone.

The court of appeals has held that some force is reasonable to stop a fleeing suspect. In Smith, 242 F.3d at 744, the court of appeals held that police officers did not use excessive force when they "pulled Smith out of the car, pinned his arms behind his back, slammed him against the hood of the car and handcuffed him."  In reaching this conclusion, the court found that the officers could have reasonably believed that Smith was trying to flee because he drove for twelve blocks after the officers sounded their siren before he finally pulled over. In this case, with a suspect willing to jump off a second story porch to evade capture, it was reasonable for defendant to believe he needed to use the force he did, even though plaintiff had fallen on the ground.  By his own account, plaintiff had been able to run another six to eight feet after jumping from the porch before his ankle injury forced him to the ground. Moreover, even after defendant had plaintiff on the ground with a knee in his back and a head lock on him, plaintiff continued to resist arrest.  In these circumstances, the force used

8

by defendant was tied directly to plaintiff's resistance and objectively reasonable.

In light of plaintiff's efforts to avoid capture, the size difference between plaintiff and defendant and plaintiff's continued resistance to being handcuffed, defendant's use of a headlock and a knee in plaintiff's back to subdue him did not amount to excessive force.

Defendant has raised a qualified immunity defense, arguing that even if he had used excessive force in arresting plaintiff, he did not violate the "clearly established law" at the time. E.g., Pearson v. Callahan, 129 S.Ct. 808, 822 (2009). It is not necessary to address it because I have found that no reasonable jury would find that the force defendant used was excessive under the circumstances.

## ORDER

IT IS ORDERED that:

1. Defendant William Charlebois's motion for summary judgment, dkt. #40, is GRANTED;

2. Plaintiff JoeLee's motion for summary judgment, dkt. #53, is DENIED as moot;

9

3. The clerk of court is directed to enter judgment in favor of defendant and close the case.

Entered this 28th day of August, 2009.

>BY THE COURT:
>
>/s/
>
>_____
>BARBARA B. CRABB
>District Judge

10